UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHELLE FITZGERALD, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>RONCALLI HIGH SCHOOL, INC., and )<br>the ROMAN CATHOLIC ARCHDIOCESE OF )<br>INDIANAPOLIS, INC., )<br>)<br>Defendants. ) | Case No. 1:19-cv-4291<br><br><br><br>Jury Demanded |

## COMPLAINT FOR DAMAGES

### Introduction

1. This is an action for damages brought by Plaintiff, Michelle ("Shelly") Fitzgerald, against Defendants, Roncalli High School, Inc., and the Roman Catholic Archdiocese of Indianapolis, Inc., for their wrongful and unlawful discrimination against her. A beloved and trusted guidance counselor at a private school, Fitzgerald was placed on administrative leave, banned from campus, and fired from her job because she married a woman. By doing so, Defendants explicitly and impermissibly have discriminated because of sex: that of Fitzgerald's and/or her spouse's. Further, though the Defendants claim they took adverse actions against Fitzgerald because her actions allegedly contradicted the teaching of the Catholic Church, they took and take no similar actions against male and/or heterosexual employees whose actions also contradict the teaching of the Catholic Church.

### Jurisdiction, Venue and Causes of Action

2. This Court has original subject matter jurisdiction of the federal questions presented herein pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has supplemental jurisdiction of the state law claims presented pursuant to 28 U.S.C. § 1367(a), because the state

and federal claims "derive from a common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), for the events or omissions giving rise to these claims arose here.

4. Plaintiff sets forth claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq. ("Title VII"), Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. ("Title IX"), and state law.

5. Plaintiff satisfied her requirement to exhaust administrative remedies by filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), on or about January 9, 2018, against the Roman Catholic Archdiocese of Indianapolis, Inc. (Charge No. 470-2019-01150).

6. On or about July 23, 2019, the EEOC issued a Notice of Right to Sue related to the Charge of Discrimination against the Roman Catholic Archdiocese of Indianapolis, Inc. (Charge No. 470-2019-01150).

7. Fitzgerald satisfied her requirement to exhaust administrative remedies by filing a Charge of Discrimination with the EEOC on or about January 10, 2019, against Roncalli High School, Inc. (Charge No. 470-2019-01193).

8. On or about July 23, 2019, the EEOC issued a Notice of Right to Sue related to the Charge of Discrimination against Roncalli High School, Inc. (Charge No. 470-2019-01193).

9. Plaintiff filing a Charge of Discrimination with the EEOC on or about March 4, 2019, against Roncalli High School, Inc. (Charge No. 470-2019-01713).

10. On or about July 23, 2019, the EEOC issued a Notice of Right to Sue related to the Charge of Discrimination against Roncalli High School, Inc. (Charge No. 470-2019-01713).

11. Fitzgerald filed a Charge of Discrimination with the EEOC on or about March 4, 2019, against the Roman Catholic Archdiocese of Indianapolis, Inc. (Charge No. 470-2019-01717).

12. On or about July 3, 2019, the EEOC issued a Notice of Right to Sue related to the Charge of Discrimination against the Roman Catholic Archdiocese of Indianapolis, Inc. (Charge No. 470-2019-01717).

**Parties**

13. Plaintiff Michelle Fitzgerald was an adult resident of Hancock County, Indiana at all relevant times.

14. Defendant Roncalli High School, Inc. (hereinafter referred to as "Roncalli"), is a non-profit domestic corporation with its principal place of business located in Indianapolis, and operates a private Catholic school of the same name.

15. Defendant Roman Catholic Archdiocese of Indianapolis, Inc. ("Archdiocese"), is a non-profit domestic corporation with its principal place of business located in Indianapolis

16. Roncalli and its school are operated under the guidance and supervision of the Archdiocese.

17. The Archdiocese derives its power to supervise and guide Roncalli's actions, as both a Catholic school and a Catholic Institution, from the Catholic Church through the power invested in the Archdiocese by the Pope and the Vatican.

18. As such, both Roncalli's affiliation with the Catholic Church, and its designation as a Catholic Institution, are controlled by the Catholic Church through the Archdiocese.

19. The Archdiocese has the power to remove Roncalli's affiliation with the Catholic Church, and its designation as a Catholic Institution, if the Archdiocese believes that Roncalli is failing to follow the teachings of the Catholic Church.

20. Through the Catholic Church, the Archdiocese also has the power to prevent Roncalli from acting as a Catholic Institution, observing Catholic rituals, performing the sacraments, and saying Mass.

21. As a result, the Archdiocese is able to both control and influence Roncalli's personnel decisions, by threatening to remove Roncalli's designation as a Catholic institution, if the Archdiocese believes that Roncalli is employing individuals who may be failing to follow the teachings of the Catholic Church.

**Factual Allegations**

22. Fitzgerald is a female former employee (pursuant to 42 U.S.C. § 2000e(f)) of the Archdiocese and Roncalli.

23. Both Defendants receive federal financial assistance.

24. Both Defendants participate in the Indiana school voucher program, wherein State public funding "follows" students enrolled at private schools.

25. Roncalli students receive benefits and services from federal and state sources based on student eligibility.

26. Roncalli is a high school of which the Archbishop of the Archdiocese is the sole corporate member.

27. Fitzgerald was employed by Defendants from July of 2004 until 2019.

28. For almost all of the foregoing term of employment, Fitzgerald served Defendants as a Guidance Counselor and/or Co-Director of Guidance at Roncalli.

29. Fitzgerald was employed pursuant to a contract, which was renewed annually until 2019.

30. As Guidance Counselor and Co-Director of Guidance, Fitzgerald was responsible for assisting and advising students regarding academic, professional and vocational options available to students.

31. Fitzgerald's positions as Guidance Counselor and Co-Director of Guidance required her to be a professional educator licensed by the State of Indiana.

32. Fitzgerald's positions as Guidance Counselor and Co-Director of Guidance did not include any religious duties.

33. Fitzgerald's positions as Guidance Counselor and Co-Director of Guidance did not include any teaching duties.

34. Fitzgerald's positions as Guidance Counselor and Co-Director of Guidance did not include any ministerial duties.

35. Fitzgerald's positions as Guidance Counselor and Co-Director of Guidance did not include any religious component.

36. Fitzgerald has never been a minister.

37. Fitzgerald has never held herself out as a minister.

38. Fitzgerald has never had held a title with the Catholic Church.

39. Fitzgerald has never been a member of the clergy of the Catholic Church.

40. Fitzgerald has never been ordained by the Catholic Church.

41. Fitzgerald has never held a title with the Catholic Church.

42. Fitzgerald was not required to have any religious instruction or training to hold her positions with Defendants.

43. Fitzgerald did not receive any religious training or instruction from either Defendant.

44. Fitzgerald had no job-related duties or responsibilities with respect to the celebration of Mass at Roncalli.

45. In 2012, the United States Supreme Court handed down its opinion in *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171 (2012), holding, inter alia, that a "ministerial exception" is available to religious institutions, which such institutions can use as a defense to certain employment-related legal claims brought by employees properly classified as "ministerial employees."

46. Prior to the Supreme Court handing down *Hosanna-Tabor*, Fitzgerald had never been classified as a ministerial employee.

47. The ministerial exception precludes governmental regulation of certain features of the employment relationship between a religious institution and its ministers.

48. On information and belief, in or around May 2016, the Archdiocese's Human Resources department told Roncalli's Principal, Chuck Weisenbach, via e-mail, that the Archdiocese's lawyers believed "school counselors and social workers do not meet the definition for the ministerial exemption."

49. Approximately two or three years ago, the Archdiocese directed Roncalli to implement uniform "morals clauses" in its employee contracts.

50. Since the 2017-18 school year, Roncalli, at the direction of the Archdiocese, required Fitzgerald to sign a "Ministry" contract, but did not provide her with ministerial or religious training, in contrast to priests and religion teachers, who did receive religious training.

51. Fitzgerald has a female spouse, to whom she has been legally married since 2014.

52. On August 10, 2018, Roncalli President Joseph Hollowell and Principal Weisenbach met with Fitzgerald and informed her they knew of her marriage to a female spouse.

53. Hollowell and Weisenbach presented Fitzgerald with the options of resigning, dissolving what they termed her "civil union" (referring to her marriage), "keeping quiet" until her contract was up (at which time it would not be renewed), or being fired.

54. Hollowell and Weisenbach represented to Plaintiff that they gave her the foregoing options because they believed her marriage violated the contract between her and Roncalli, insofar as it was contrary to teaching of the Catholic Church.

55. Fitzgerald refused to resign, dissolve her marriage, or keep quiet about it.

56. On August 10, 2018, Defendants placed Fitzgerald on paid administrative leave.

57. On August 12, 2018, Defendants banned Fitzgerald from the school campus until further notice.

58. On August 12, 2018, Defendants issued a press release stating that Fitzgerald had been placed on paid administrative leave because she was "living in a civil marriage that is not valid in the eyes of the Church."

59. On August 12, 2018, Defendants cut off Fitzgerald's access to her work e-mail account.

60. On or about September 10, 2018, Defendants placed a classified advertisement for a temporary replacement for Fitzgerald.

61. On or about October 6, 2018, Defendants placed a classified advertisement for a permanent replacement for Fitzgerald.

62. On or about October 6, 2018, Fitzgerald cleaned out her office, accompanied by Weisenbach.

63. At some point before the end of 2018, Defendants hired a guidance counselor to replace Fitzgerald.

64. Fitzgerald met Defendants' legitimate performance expectations throughout her period of employment with them.

65. On or around January 31, 2019, Fitzgerald received from Roncalli an "Intent to Return" form, upon which she designated her intent to return to her employment during the next contract year of 2019-20, and which she promptly returned.

66. On May 2, 2019, Roncalli informed Fitzgerald that her employment contract, which expired on July 31, 2019, was not going to be renewed.

67. Roncalli's decision not to renew Fitzgerald's employment contract was consistent with Defendant's statement of intent in the meeting with Fitzgerald on August 10, 2018.

68. As such, Roncalli's decision not to renew Fitzgerald's contract was the culmination of Defendant's discriminatory acts taken against her.

69. Since August 10, 2018, Fitzgerald and her family have taken an active role in opposing the discriminatory and unlawful actions taken by the Defendants against her.

70. Fitzgerald's family has opposed the actions of the Defendants with frequent posts on social media, by participating in rallies and protests, by appearing on television and by speaking to the print media.

71. Fitzgerald's activism has included her participation in numerous interviews with all forms of media across the world, including print, television, radio and podcasts.

72. Fitzgerald was also named the Keynote Speaker of the Women's March and the Grand Marshall of the Pride Parade; was appointed to the Board of the Indiana Youth Group; appeared on the Ellen DeGeneres show; and spoke out against Defendants' wrongful discrimination against her and others in these and other capacities and venues.

73. After Fitzgerald was placed on administrative leave, several students at Roncalli formed a non-profit advocacy group known as "Shelly's Voice" which was formed to oppose the

discriminatory actions of the Defendants and to promote acceptance and unity within the Catholic Church.

74. Fitzgerald serves on the Board of Shelly's Voice and is an active mentor for the students in their efforts opposing discrimination and expanding their social activism.

75. Fitzgerald's activism in opposition to the Defendants' discriminatory actions continues to this day, including a trip to Washington D.C. to meet with Representative André Carson, conduct an interview with the Washington Post, participate in the rallies in Washington D.C., and observe the oral arguments held on October 8, 2019 before the United States Supreme Court in *Bostock v. Clayton County,* Docket No. 17-1618, cert. granted 2019 WL 1756677 (U.S. Apr. 22, 2019), and *Altitude Express, Inc. v. Zarda*, No. 17-1623, cert. granted 2019 WL 1756678 (U.S. Apr. 22, 2019).

76. As a result of her actions opposing the Defendants' discriminatory actions, Fitzgerald was named "Human of the Year" by the *Indianapolis Star*.

## Legal Claims

### Count I
### Violation of Title VII

77. Each paragraph of this *Complaint* is incorporated as if fully restated herein.

78. As described herein, Defendants discriminated against Fitzgerald by treating her differently from and less preferably than similarly situated employees who are married to women, and/or who are heterosexual, by wrongfully discharging her, with respect to her terms, conditions or privileges of employment, in substantial part due to her sex, sexual orientation, and/or marriage to a woman.

79. Fitzgerald is a member of a protected class due to her sexual orientation, of which Defendants knew prior to the adverse actions they took against her.

80. Fitzgerald is in a legally valid same sex marriage.

81. Roncalli and the Archdiocese employ heterosexuals who are in legally valid, opposite sex marriages that allegedly violate the teaching of the Catholic Church.

82. Roncalli and the Archdiocese employ heterosexuals who violate teachings of the Catholic Church.

83. Fitzgerald met or exceeded Defendants' legitimate performance expectations during her employment by them.

84. Fitzgerald suffered one or more adverse employment actions affecting the terms and conditions of her employment, including but not limited to: being placed on administrative leave; being banned from the Roncalli campus; being blocked from using her work email; being accompanied and supervised while she cleaned out her office; having her co-workers, supporters and students subjected to threats and intimidation; and the non-renewal of her employment contract.

85. Defendants treated Fitzgerald differently, and to her detriment, as compared to similarly situated heterosexual employees.

86. Defendants treated Fitzgerald differently, and to her detriment, as compared to similarly situated male employees.

87. Defendants discriminated Fitzgerald on the basis of sex and violated Title VII by:

(1) treating her less favorably because of her sex;

(2) taking her sex into account by treating her differently from similarly-situated men who married a woman;

(3) taking into account the sex of her spouse;

(4) discriminating against her based on gender and sex stereotypes, including heterosexually-defined gender norms;

(5) taking her sex into account by treating her differently from men who are in marriages that allegedly violate the teaching of the Catholic Church; and/or

(6) taking her sexual orientation into account by treating her differently from heterosexuals who are in legally valid, opposite sex marriages that allegedly violate the teaching of the Catholic Church; and/or

(7) taking her sex and/or sexual orientation into account by treating her differently from men and/or heterosexuals whose behavior allegedly violates the teaching of the Catholic Church.

88. There is a causal connection between Fitzgerald's sex and marital status and Defendants' adverse employment actions towards her.

89. There is a causal connection between Fitzgerald's sexual orientation and marital status and Defendants' adverse employment actions towards her.

90. Fitzgerald has suffered damages as a result of Defendants' discriminatory actions, including but not limited to lost back pay, lost front pay, loss of future earning capacity, lost employer provided benefits, and emotional distress damages.

91. Defendants' wrongful discrimination against Plaintiff violated Title VII, 42 U.S.C. § 2000e-2.

92. As a proximate result of the actions and omissions discussed in this count, Fitzgerald suffered damages, experienced mental anguish and emotional distress and may continue to suffer from these injuries in the future.

## Count II
## Violation of Title VII – 42 U.S.C. § 2000e-3
## Retaliation

93. Each paragraph of this *Complaint* is incorporated as if fully restated herein.

94. As described herein, Defendants wrongfully discriminated and retaliated against Fitzgerald for her activism in opposing the unlawful practices described in Count I and throughout this Complaint.

95. Fitzgerald opposed Defendants' wrongful discrimination and unlawful practices by complaining to the Archbishop of the Archdiocese, Principal Weisenbach, President Hollowell, and through her social activism, based upon her reasonable, good-faith belief that the Defendants had violated Title VII.

96. In response to Fitzgerald's efforts to oppose the perceived discrimination, the Defendants took retaliatory action against Pat Fitzgerald, the natural and biological father of Fitzgerald.

97. As Fitzgerald's natural and biological father, and a long-time volunteer closely affiliated with Roncalli, Pat Fitzgerald falls within the "zone of interests" sought to be protected by Title VII.

98. The Senior Retreat is offered to Roncalli students in their final year of high school as an opportunity to explore and reflect upon their personal and spiritual growth.

99. The Senior Retreat is a deeply personal and emotional experience that is supervised by adult volunteers who guide the students on a journey of reflection and understanding.

100. Pat Fitzgerald had worked as a volunteer and guest speaker on the Roncalli Senior Retreat every year for over twenty-six (26) years.

12

101. Pat Fitzgerald considered the Roncalli Senior Retreat as one of the most rewarding and emotionally fulfilling experiences of his life.

102. By all accounts, Pat Fitzgerald was an excellent speaker, a valued volunteer, and a significant contributor to the overall experience of the students on the Senior Retreat.

103. In mid-January of 2019, Pat Fitzgerald was advised by a representative of the Defendants that he could no longer work as a volunteer at the Roncalli High School Senior Retreat.

104. Pat Fitzgerald was emotionally crushed when he was told he would no longer be allowed to participate in the Senior Retreats.

105. When Pat Fitzgerald inquired as to why such action was being taken against him, he was advised that the decision was being made by the Defendants because he had appeared on the news in a rally to support his daughter wherein he had held up a sign that read "<u>Please treat my daughter Shelly kindly</u>."

106. When Fitzgerald learned of the action taken against her father by the Defendants due to his support of her efforts to oppose perceived discrimination by the Defendants, she became wracked with guilt and anxiety and suffered extreme emotional pain and distress.

107. Defendants' actions against Pat Fitzgerald were intended to punish Fitzgerald for her social activism and her efforts to oppose the Defendants' unlawful acts.

108. Defendants' actions against Pat Fitzgerald were also intended to deter Fitzgerald's social activism and her efforts to oppose the Defendants' unlawful acts.

109. Defendants' actions against Pat Fitzgerald were intended to cause both Pat Fitzgerald and his daughter so much emotional anguish and pain that Fitzgerald would forego any litigation against the Defendants.

110. In addition to the actions taken against Fitzgerald's father, Defendants' wrongful discrimination and retaliation against Plaintiff included, inter alia, one or more adverse employment actions impacting the terms and conditions of her employment, a hostile work environment, being placed on administrative leave, being banned from campus, and the non-renewal of her employment contract, each of which violated Title VII, 42 U.S.C. § 2000e-3.

111. As a proximate result of the actions and omissions discussed in this count, Fitzgerald suffered damages, experienced mental anguish and emotional distress and may continue to suffer from these injuries in the future.

### Count III
### Violation of Title VII – 42 U.S.C. § 2000e
### Hostile Work Environment

112. Each paragraph of this *Complaint* is incorporated as if fully restated herein.

113. Fitzgerald is a member of a protected class due to her sexual orientation.

114. From August 2018 through her last day of employment, Fitzgerald was subjected to a discriminatorily abusive work environment, or hostile work environment, based on her sexual orientation and her sex.

115. The work environment at Roncalli was objectively and subjectively hostile towards homosexual students, faculty, and staff, and sufficiently severe or pervasive to alter the terms of conditions of employment.

116. Defendants knew or should have known about the hostile work environment experienced by Fitzgerald and failed to take any reasonable steps to take corrective action or prevent the hostile work environment from recurring.

117. As a proximate result of the actions and omissions discussed in this count, Fitzgerald suffered damages, experienced mental anguish and emotional distress and may continue to suffer from these injuries in the future.

## Count IV
## Violation of Title IX – Retaliation

118. Each paragraph of this *Complaint* is incorporated as if fully restated herein.

119. At all relevant times, Defendants received federal financial assistance.

120. Fitzgerald engaged in protected activity under Title IX by opposing Defendants' unlawful discrimination.

121. Fitzgerald opposed Defendants' wrongful discrimination and unlawful practices by complaining to the Archbishop of the Archdiocese, Principal Weisenbach, President Hollowell, and the media, based upon her reasonable, good-faith belief that the Defendants had violated Title VII and/or Title IX.

122. Fitzgerald suffered one or more adverse employment actions, impacting the terms and conditions of her employment, including but not limited to a hostile work environment, constructive discharge, and the non-renewal of her employment contract.

123. Defendants retaliated against Fitzgerald for engaging in protected activities through her complaints of sex, sexual orientation, and/or marital status discrimination and publicity associated with those complaints.

124. Fitzgerald has suffered damages as a result of Defendants' retaliatory actions, including but not limited to lost back pay, lost front pay, loss of future earning capacity, lost employer provided benefits, and emotional distress damages.

## Count V
## Indiana State Law - Tortious Interference with a Contractual Relationship against the Archdiocese only

125. Each paragraph of this *Complaint* is incorporated as if fully restated herein.

126. Fitzgerald and Roncalli had a valid and existing contract for Fitzgerald's employment as a guidance counselor and Co-Director of Guidance at Roncalli.

127. Based on her successful employment, positive performance evaluations, and excellent professional reputation, Fitzgerald had every reason to expect to continue to work at Roncalli for the foreseeable future.

128. The Archdiocese knew about the contract between Fitzgerald and Roncalli.

129. The Archdiocese intentionally interfered with Fitzgerald's contract with Roncalli by forcing Roncalli to place Fitzgerald on administrative leave, ban her for campus, constructively discharge her, not renew Fitzgerald's contract for the 2019-20 school year, directing Roncalli to consider her a ministerial employee, and/or by directing Roncalli to implement a "morals clause" in Fitzgerald's contract.

130. The Archdiocese's interference with Fitzgerald's contract with Roncalli was not justified.

131. Fitzgerald has suffered damages as a result of Defendant's actions described herein, including but not limited to lost back pay, lost front pay, loss of future earning capacity, lost employer provided benefits, and emotional distress damages.

## Count VI
## Indiana State Law - Tortious Interference with a Business Relationship against the Archdiocese only

132. Each paragraph of this *Complaint* is incorporated as if fully restated herein.

133. Fitzgerald and Roncalli had a valid and existing employment relationship.

134. The Archdiocese knew about Fitzgerald's employment relationship with Roncalli.

135. The Archdiocese intentionally interfered with Fitzgerald's employment relationship with Roncalli by forcing Roncalli to place Fitzgerald on administrative leave, ban her for campus, constructively discharge her, and not renew Fitzgerald's contract for the 2019-20 school year, directing Roncalli to consider her a ministerial employee, and/or by directing Roncalli to implement a "morals clause" in Fitzgerald's contract.

136. The Archdiocese's interference with Fitzgerald's business relationship with Roncalli was not justified.

137. Fitzgerald has suffered damages as a result of Defendant's actions described herein, including but not limited to lost back pay, lost front pay, loss of future earning capacity, lost employer provided benefits, and emotional distress damages.

**WHEREFORE**, Michelle Fitzgerald, by counsel, respectfully prays the Court enter judgment in her favor, against Defendants, as follows:

A. An award of back pay with interest for the salary and other employment benefits and opportunities that she has lost as a result of the Defendants' unlawful adverse employment actions, including termination of Plaintiff's employment;

B. Compensatory and punitive damages in an amount to be determined by a jury to compensate Plaintiff for the emotional distress and mental anguish she has suffered due to Defendants' conduct, and to deter Defendants and other employers from engaging in similar conduct in the future;

C. An award of damages to compensate Plaintiff for the losses that she reasonably has and will sustain as the result of the denial of continued employment by Defendants;

D. Pre-judgment and post-judgment interest where appropriate;

E. An award of reasonable attorney fees and costs incurred in this action; and

F. Such other relief as may be just and proper.

## **DEMAND FOR TRIAL BY JURY**

138. Plaintiff, by counsel, hereby requests a trial by jury with respect to any issues so triable.

        Respectfully submitted,


        *s/ David T. Page*
        David T. Page
        1634 W. Smith Valley Road, Suite B
        Greenwood, IN  46142
        317-885-0041 Tel
        888-308-6503 Fx

        *s/ Mark W. Sniderman*
        Mark W. Sniderman
        FINDLING PARK CONYERS WOODY
         & SNIDERMAN, P.C.
        151 N. Delaware St., Ste. 1520
        Indianapolis, IN  46220
        (317) 231-1100 Tel
        (317) 231-1106 Fx
        msniderman@findlingpark.com

        *Attorneys for Plaintiff, Michelle Fitzgerald*