# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHELLE FITZGERALD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-4291-RLY-TAB |
| ) | |
| RONCALLI HIGH SCHOOL, INC., ) | |
| and the ROMAN CATHOLIC ) | |
| ARCHDIOCESE OF ) | |
| INDIANAPOLIS, INC., ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' MOTION TO ALTER OR AMEND JUDGMENT

On March 31, 2021, this Court issued an order granting in part and denying in part the motion for judgment on the pleadings filed by Defendants Roncalli High School and the Roman Catholic Archdiocese of Indianapolis (together, "the Archdiocese"). Dkt. 98. In doing so, the Court stated that "[t]his case presents virtually identical issues to those presented in another case in this court," *Starkey v. Roman Catholic Archdiocese of Indianapolis, Inc. et al.*, No. 1:19-cv-03153-RLY-TAB (S.D. Ind.), and that "Defendants' motion presents the same issues and arguments as those presented in *Starkey*." Dkt. 98 at 1, 4. The Archdiocese submits this brief motion to alter or amend the judgment under Rule 59 in light of a significant difference between *Starkey* and this case, which supports an argument made in this litigation only.[1]

---

[1] Where an interlocutory order falls within the collateral order doctrine, a party may seek reconsideration under Rule 59(e), separate from the Court's authority to revisit interlocutory rulings under Rule 54(b). *See, e.g.*, *Lora v. O'Heaney*, 602 F.3d 106, 110 (2d Cir. 2010) (defendants appealing adverse interlocutory order on immunity claim "could have tolled the time within which to file an appeal of the underlying order by timely filing a motion under Rule 59 or 60"). The Seventh Circuit sought initial briefing on whether the parallel *Starkey* order falls within the collateral order doctrine, and determined the matter should proceed to full briefing on all issues. S*ee* Order,

As explained in the Archdiocese's Motion for Judgment on the Pleadings, Fitzgerald failed to plead "but-for" causation with respect to her Title VII retaliation claim. Dkt. 42 at 16-19. Instead, she grounds her claim in protected activity post-dating the alleged adverse employment action. Because the Court did not mention this argument in its order, Defendants respectfully raise it again for the Court's consideration. *See* Dkt. 98 at 4-5 (summarizing only the Archdiocese's arguments on the Title VII religious exemption, the First Amendment, and preemption).

## FACTUAL BACKGROUND

Fitzgerald's complaint alleges that on August 10, 2018, Roncalli leadership "informed her they knew of her marriage" and "explained that her marriage violated the employment contract because it was contrary to the teachings of the Catholic Church." Dkt. 98 at 3-4 (citing Complaint, Dkt. 1). According to the complaint, on that date, leadership told Fitzgerald that her contract "would not be renewed" due to her union and "placed Fitzgerald on paid administrative leave." Dkt. 1 at ¶¶ 53-56; see Dkt. 1 at ¶ 67 (explaining that formal nonrenewal was "consistent with Defendant's statement of intent in the meeting with Fitzgerald on August 10, 2018"). Fitzgerald alleges that after that decision ("[s]ince August 10, 2018"), "Fitzgerald and her family have taken an active role in opposing" her nonrenewal, including by "frequent posts on social media, by participating in rallies and protests, by appearing on television and by speaking to the print media." Dkt. 1 at ¶¶ 69-70 (family); see Dkt. 1 at ¶¶ 72-75 (noting Fitzgerald has acted as "Keynote Speaker of the Women's March and the Grand Marshall of the Pride Parade," "appeared on the Ellen DeGeneres Show," and "conduct[ed] an interview with the Washington Post"). Fitzgerald also alleges that, subsequent to his own activism, her father was told he could not participate "as a volunteer and guest speaker" on a retreat for Roncalli dedicated to "personal and

---

*Starkey v. Roman Catholic Archdiocese of Indianapolis, Inc. et al.*, No. 20-3265 (7th Cir. Jan. 13, 2021), Dkt. 16.

2

spiritual growth" of students. Dkt. 1 at ¶¶ 98-100, 103 (retreat "is a deeply personal and emotional experience … supervised by adult volunteers"). Her father was advised that this was "because he had appeared on the news in a rally" against the Archdiocese's decision regarding Fitzgerald. Dkt. 1 at ¶ 105.

In this action, Fitzgerald alleged retaliation under Title VII, stating that her placement on "administrative leave," "non-renewal of her employment contract," and attendant decisions supported a retaliation claim. Dkt. 1 at ¶ 110. She also alleged that Roncalli's decision to not include her father as a retreat volunteer was a means of retaliation, and that her father "falls within the 'zone of interests' sought to be protected by Title VII." Dkt. 1 at ¶¶ 97, 107.

## ARGUMENT

Fitzgerald's retaliation claim fails on the pleadings because her complaint makes clear that all adverse employment decisions were made before the alleged protected activity took place. As discussed in the Motion for Judgment on the Pleadings, "retaliation claims require proof that the desire to retaliate" against protected opposition activity "was the but-for cause of the challenged employment action." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 339 (2013) (Title VII). Because but-for causation implies a chain of events, a retaliation "theory doesn't work" if the allegedly retaliatory decision "precedes the protected activity." *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 676 (7th Cir. 2011) (quoting *Leonard v. E. Ill. Univ.*, 606 F.3d 428, 432 (7th Cir. 2010)); *see Darbha v. Capgemini Am. Inc.*, 492 F. App'x 644, 647-68 (7th Cir. 2012) (explaining it is "impossible" for protected activity to be the but-for cause of an adverse employment decision when the decision came first).

That some aspects of the August 10 decision were carried out after they were communicated to Fitzgerald on August 10 is immaterial. "Employers need not suspend previously planned" actions due to protected activity. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001) (per curiam). And courts have uniformly held that where a

3

decision "reached"—or even "contemplated"—before the protected opposition activity was actually "carr[ied] out," the subsequent carrying-out still cannot support a causal link. *Curay-Cramer v. Ursuline Acad.*, 450 F.3d 130, 137 (3d Cir. 2006) (dismissing claim where complaint "makes it clear that [Defendant] contemplated firing her" before alleged protected activity); *see also Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 507 (6th Cir. 2014) (same for "adverse employment actions that were previously contemplated" (citing *Nassar*, 570 U.S. at 358)); *Darbha v. Capgemini Am., Inc.*, No. 10 C 2581, 2012 WL 718826, at *3, *9 (N.D. Ill. Mar. 6, 2012), *aff'd*, 492 F. App'x 644 (7th Cir. 2012) (no causal connection even though pre-protected-activity "decision to terminate" was conditional and nonfinal). Fitzgerald's complaint makes clear that the alleged actions after August 10 were simply the carrying-out of the Archdiocese's "statement of intent in the meeting with Fitzgerald on August 10, 2018," and that all alleged opposition activities occurred subsequent to that date. Dkt. 1 at ¶¶ 67, 69. Fitzgerald "cannot create an issue of retaliation" by opposing a "decision to terminate h[er] employment" made "earlier." *Darbha*, 2012 WL 718826, at *9.[2]

Trying to skirt the timeline problem, Fitzgerald's Complaint also mentions that her father was told he wouldn't be part of the volunteer team at a spiritual retreat for Roncalli seniors. Dkt. 1 at ¶ 103. But the Complaint alleges that Fitzgerald's father was told he could not return as a volunteer because of his own protest activity—not Fitzgerald's. Dkt. 1 at ¶ 105 (father "was advised that the decision was … because he had appeared on the news in a rally to support his daughter," Fitzgerald). Meanwhile, Title VII's retaliation provisions prohibit discrimination against an employee "because *he*"—the employee—"has opposed" prior discrimination. 42 U.S.C. § 2000e-3(a) (emphasis added). Fitzgerald's fact allegations thus not only fail to support the

---

[2] These arguments equally precluded Fitzgerald's Title IX retaliation claim, *see Burton v. Bd. of Regents of Univ. of Wis. Sys.*, 851 F.3d 690, 695 (7th Cir. 2017), though the Court also dismissed that claim on other grounds, Dkt. 98 at 6.

4

Complaint's later conclusory statements that Fitzgerald's father was excluded to harm Fitzgerald; they spell out the clear, nonprohibited reason for the decision.

Nor does the Complaint's brief legal assertion that Fitzgerald's father "falls within the 'zone of interests' sought to be protected by Title VII" save the claim. Dkt. 1 at ¶ 97. The "zone of interests" analysis is used to determine whether a person is a proper *plaintiff* in a Title VII suit, *Thompson v. North American Stainless, LP*, 562 U.S. 170, 177-78 (2011)—which is irrelevant here, since Fitzgerald's father hasn't sued. In any event, the assertion is wrong: Fitzgerald's father does not fall within Title VII's zone of interests because he was a volunteer, not an employee. *See Simmons v. UBS Fin. Servs., Inc.*, 972 F.3d 664, 665 (5th Cir. 2020) (nonemployee father harmed in retaliation for his daughter's protected activity could not sue because "[a]s a nonemployee, Simmons asserts interests that are not within the zone that Title VII protects"), *cert denied*, No. 20-813, 2021 WL 666439 (U.S. Feb. 22, 2021).

While not necessary to reach, the Complaint also indicates that pursuing a retaliation claim based on the treatment of Fitzgerald's father would be precluded by the ministerial exception, even if (counterfactually) it were permitted by Title VII. The Complaint states that Fitzgerald's father was excluded from a role of "supervis[ing] … students on a journey of reflection" "upon their personal and spiritual growth" in a "deeply personal and emotional" context. Dkt. 1 at ¶¶ 98-99. The Supreme Court has advised that such a role "training [students] to live their faith" or "inculcating its teachings" falls within the ministerial exception. *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2064 (2020) (describing these "responsibilities" as "at the very core of the mission of a private religious school"). And it is well-established that no action taken with regard to "choosing" to retain or exclude a minister can support a Title VII claim for retaliation. *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 196 (2012). So any action taken with regard to the spiritual-direction-retreat role could not support a claim. *See, e.g., InterVarsity*

5

*Christian Fellowship/USA v. Bd. of Governors of Wayne State Univ.*, No. 19-10375, 2021 WL 1387787, at *1, 31 (E.D. Mich. Apr. 13, 2021) (volunteer student leaders charged with "religious counsel" and "spiritual activities" were ministers under "well established" law); *Cannata v. Cath. Diocese of Austin*, 700 F.3d 169, 177 (5th Cir. 2012) (evidence showed that church musicians "whether they are professional or volunteer" are engaged in ministry); *cf. Schleicher v. Salvation Army*, 518 F.3d 472, 474 (7th Cir. 2008) ("Ministers of the Salvation Army receive no wages," only a small "allowance" below minimum wage, but are subject to ministerial exception).

Whatever the merits of her claims, the *Starkey* plaintiff alleged comments made to Archdiocesan leadership prior to the decision to not renew her contract. Complaint, *Starkey*, No. 1:19-cv-03153 (July 29, 2019), Dkt. 1 at ¶ 38. No such facts were, or could have been, alleged here. That difference is dispositive as to Fitzgerald's retaliation claim and requires judgment on the pleadings for the Archdiocese.

## CONCLUSION

The Archdiocese respectfully requests the Court alter or amend the order of March 31, 2021, to dismiss Fitzgerald's Title VII retaliation claim.

Respectfully submitted,

| | |
|---|---|
| John S. (Jay) Mercer, #11260-49<br>Wooton Hoy, LLC<br>13 North State Street, #2A<br>Greenfield, IN 46140<br>(317) 439-0541 | */s/ Luke W. Goodrich*<br>Luke W. Goodrich (DC # 977736)<br>Daniel H. Blomberg (DC # 1032624)<br>Joseph C. Davis (DC # 1047629)<br>Christopher C. Pagliarella (DC #273493)<br>The Becket Fund for Religious Liberty<br>1919 Pennsylvania Ave. NW Ste. 400<br>Washington, DC 20006<br>(202) 955-0095<br>(202) 955-0090 fax<br>lgoodrich@becketlaw.org |

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served upon the following on April 28, 2021, by this Court's electronic filing system:

Mark W. Sniderman
Findling Park Conyers Woody & Sniderman, P.C.
151 N. Delaware St., Suite 1520
Indianapolis, IN 46204
Tel: (317) 361-4700

David T. Page
Henn Haworth Cummings & Page
1634 W. Smith Valley Road, Suite B
Greenwood, IN 46142
Tel: (317) 885-0041

Adrianne Spoto
Bradley Girard
Richard B. Katskee
Americans United for Separation of Church and State
1310 L Street NW, Suite 200
Washington, DC 20005
Tel: (202) 466-3234

                                              By: /s/ Luke W. Goodrich
                                              Luke W. Goodrich (DC # 977736)
                                              Daniel H. Blomberg (DC # 1032624)
                                              Joseph C. Davis (DC # 1047629)
                                              Christopher C. Pagliarella (DC # 273493)
                                              The Becket Fund for Religious Liberty
                                              1200 New Hampshire Ave NW
                                              Suite 700
                                              Washington, DC 20036
                                              (202) 955-0095
                                              (202) 955-0090 fax