UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| MICHELLE FITZGERALD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:19-cv-04291-RLY-TAB |
| | ) |
| RONCALLI HIGH SCHOOL, INC., and | ) |
| the ROMAN CATHOLIC | ) |
| ARCHDIOCESE OF | ) |
| INDIANAPOLIS, INC., | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO ALTER OR AMEND JUDGMENT**

On March 31, this Court correctly decided that Michelle Fitzgerald's Title VII and state-law claims should survive the School's motion for judgment on the pleadings. The Court concluded that "Fitzgerald has carried her burden of pleading sufficient facts to support a plausible claim of a Title VII violation." ECF 98 at 5. The motion to alter or amend does nothing other than rehash the School's arguments that Fitzgerald has failed to allege but-for causation as to her retaliation claim. For the reasons explained in Fitzgerald's opposition to the School's motion for judgment on the pleadings, *see* ECF 53 at 16, and as explained below, the Court should deny the School's motion.

## Standard of Review

The Court reviews motions made under Rule 12(c) of the Federal Rules of Civil Procedure under the same standard as motions to dismiss under Rule 12(b). *N. Ind. Gun & Outdoor Shows v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). Thus, the question remains whether Fitzgerald has pleaded a plausible claim for relief. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014). The Court "must construe [the complaint] in the light most favorable to the plaintiff, accept well-pleaded facts as true, and draw all inferences in the plaintiff's favor." *Id.* Even apart from the ordinary presumption in favor of the plaintiff on a motion to dismiss, though, the Court should be particularly reluctant to grant the School's request here because proper motions for reconsideration "present either newly discovered evidence or establish a manifest error of law or fact." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). A motion to reconsider should not merely "rehash[] previously rejected arguments or argu[e] matters that could have been heard during the pendency of the previous motion." *Caisse Nationale de Credit Agricole v. CBI Indus.*, 90 F.3d 1264, 1269–70 (7th Cir. 1996). Yet that is all that the School does here.

## Argument

**I.    Fitzgerald has sufficiently pleaded but-for causation.**

Title VII's anti-retaliation provision prohibits an employer from discriminating against an employee "because [s]he has opposed any practice made an unlawful employment practice" by Title VII or "because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or

2

hearing" under Title VII. 42 U.S.C. § 2000e-3(a). To plead a retaliation claim, a plaintiff must allege but-for causation—that is, the plaintiff must allege facts that, if true, could show that the employer would not have taken the alleged adverse action without the plaintiff's having engaged in a protected activity. *See, e.g.*, *Carlson*, 758 F.3d at 828 n.1. The employee need not show, however, that her protected activity was "the only cause" of the adverse action. *See id.*

Fitzgerald sufficiently alleged that the School retaliated against her for engaging in protected activity. On August 10, the School discriminated against Fitzgerald by threatening to fire her because she is married to a woman. During a meeting with her that day, Defendants gave her four options: (1) resign; (2) dissolve her marriage (which they incorrectly referred to as a "civil union"); (3) "keep[] quiet" until the end of her contract year; or (4) be fired. ECF 1, Compl. 7 ¶ 53. When she "refused to resign, dissolve her marriage, or keep quiet about it," the School placed her on administrative leave. *Id.* at 7 ¶¶ 55–56. And when Fitzgerald then did not remain silent in the ensuing days but instead complained to the School and Archdiocese and spoke out publicly about how she had been treated, the School banned her from campus and locked her out of her work email. *Id.* at 7 ¶¶ 57–59, 8 ¶¶ 69–72, 12 ¶ 95.

But that wasn't the end of the retaliation. Shortly after Fitzgerald filed claims with the EEOC on January 9 and 10, 2019, the School punished her by prohibiting her father from volunteering at the School's senior retreat—a role he had filled for over twenty-six years and had viewed as "one of the most rewarding

and emotionally fulfilling experiences of his life." *Id.* at 12–13 ¶¶ 100–09. And then, in reaction to Fitzgerald's EEOC claims and her unwillingness to accept or stay silent about the School's discrimination, the School refused to renew her contract in May 2019. *Id.* at 8 ¶¶ 65–66.

In sum, each time Fitzgerald opposed her discrimination, the School made it worse.

Despite these well-pleaded allegations, the School insists that Fitzgerald's retaliation claim must be dismissed because the School contends that it had already decided to take adverse action against her by the August 10 meeting and therefore the adverse actions that it would take were not in response to her opposing and speaking out against its discriminatory activity. To support that argument, the School relies on cases in which employers decided to take adverse action against their employees before the employees engaged in protected activity (or before the employer learned of the protected activity) *and* the employer showed that it acted for reasons unrelated to protected action. *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001);[1] *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 676 (7th Cir. 2011) (employee fired for belittling a nurse in front of a patient); *Curay-Cramer v. Ursuline Acad.*, 450 F.3d 130, 136–37 (3d Cir. 2006) (employee

---

[1] *Clark County* also specifically focused on a summary-judgment dispute in which the plaintiff relied solely on temporal proximity—and produced no other evidence—to show causation. *Clark Cnty.*, 532 U.S. at 272; *see also Hayes v. Elementary Sch. Dist. No. 159*, No. 10 C 7095, 2011 WL 1059890, at *2–3 (N.D. Ill. Mar. 21, 2011). Because there has been no merits discovery, and therefore no evidence developed on causation, any reliance on *Clark County* at this stage would be premature.

4

fired for endorsing advertisement with which the employer disagreed); *Darbha v. Capgemini Am., Inc.*, No. 10 C 2581, 2012 WL 718826, at *9 (N.D. Ill. Mar. 6, 2012) (the project to which the plaintiff was assigned had ended), *aff'd*, 492 F. App'x 644 (7th Cir. 2012).

    Neither of those is what is alleged here. The Complaint cannot be read to say that the School had decided on all of its retaliatory actions—such as banning Fitzgerald from campus and stopping her father from volunteering—before Fitzgerald began opposing their discrimination. And far from being unrelated to Fitzgerald's protected activity, the School's decisions to put Fitzgerald on administrative leave, ban her from campus, and block her from her work email were responses to her unwillingness to accept the discrimination and her determination to speak out about it. The School not only discriminated against her initially by demanding that she dissolve her marriage or be fired, but it also put unlawful conditions on her ability to protest that discrimination by demanding that she remain silent for the rest of the year or else be removed. By conditioning its future treatment or mistreatment of Fitzgerald on her cooperation with that discrimination, the School was threatening retaliation if Fitzgerald spoke out against or otherwise opposed the initial discrimination. And then the School followed through on those threats.

    That the School, when initially deciding to discriminate against Fitzgerald, may have recognized that it might wish to engage in *additional* future unlawful treatment of her down the road does not make that future treatment any less

retaliatory. That is because that future treatment was at least in part in response to Fitzgerald's expectation that her rights be respected and her unwillingness to suffer the original discrimination in silence. Punishing an employee for speaking up on behalf of her rights is not any less retaliatory if the employer threatens to do so ahead of time—or, as in this case, promises that it *won't* retaliate if the employee keeps quiet and just goes along. The promise not to retaliate if the employee shuts up and goes away is merely a threat to retaliate using different language.

What is more, even if the Complaint could be read to establish that the School had firmly and finally determined on August 10 that it would fire Fitzgerald, which it cannot, that would not bar her retaliation claim either. For when "alleged retaliatory behavior pre-existed the protected activity," a plaintiff can establish causation by showing "ratcheting up or increased harassment." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 793 (7th Cir. 2007). Thus, even post-termination retaliation may be actionable. *See, e.g.*, *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346 (1997) (permitting post-termination retaliation claim based on negative reference given to prospective employer).

Fitzgerald straightforwardly pleaded retaliatory acts by the School after August 10—in other words, "ratcheting up or increased harassment," *Boumehdi*, 489 F.3d at 793—that are more than sufficient to state a claim. The School banned her from campus on August 12 and removed her access to her work email. ECF 1, Compl. 7 ¶¶ 57, 59. Then the School ratcheted up its retaliation even further in mid-January, after Fitzgerald filed her EEOC complaint, by prohibiting Fitzgerald's

6

father from volunteering at the School's senior retreat. *Id.* at 13 ¶ 103. The Complaint does not allege or offer any basis to infer that the additional retaliatory actions had been decided on or even discussed before or during the August 10 meeting.

## II. Fitzgerald's retaliation claim can rely on the School's treatment of her father.

Title VII's retaliation provision should be read "to cover a broad range of employer conduct." *Thompson v. N. Am. Stainless, LP*, 562 U.S. 170, 173 (2011). It does not limit "the actions and harms it forbids to those that are related to employment or occur at the workplace." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006). Instead, it applies to any actions taken by an employer that "would have been materially adverse to a reasonable employee"—namely, actions that "could well dissuade a reasonable worker from making or supporting a charge of discrimination" or from opposing discriminatory conduct. *See id.* That includes reprisals against third parties. *Thompson*, 562 U.S. at 174–75. So, for example, an employer committed actionable retaliation when, after one of its employees filed an EEOC charge, it fired that employee's fiancé in response, for it is "obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fianc[é] would be fired." *Id.* at 174.[2]

---

[2] *Thompson* also addressed the "more difficult question" whether the fiancé who was fired could bring a retaliation claim of his own for his termination. *Id.* at 175, 178 (reasoning that he could, because he "f[ell] within the zone of interests protected by Title VII"). The Court need not address that issue here, as Fitzgerald's father has not filed a claim of his own against the School. For the same reason, *Simmons v. UBS Financial Services, Inc.*, 972 F.3d 664, 665 (5th Cir. 2020), which involved a retaliation suit by a *non*employee, is irrelevant.

7

It is no less obvious that reprisals against a parent—and especially actions that cut that parent off from the community that is and has been so central a part of his life—are exactly the kind of action that "could well dissuade a reasonable worker" from making a charge of discrimination or opposing discriminatory conduct. *See Burlington*, 548 U.S. at 57. Fitzgerald alleged that the School prohibited her father from volunteering "[i]n response to Fitzgerald's efforts to oppose the perceived discrimination," "to punish Fitzgerald for her social activism and her efforts to oppose the Defendants' unlawful acts," "to deter" her opposition to the School's discriminatory actions, and "to cause both Pat Fitzgerald and his daughter so much emotional anguish and pain that Fitzgerald would for[]go any litigation against the Defendants." ECF 1, Compl. 12 ¶ 96, 13 ¶¶ 107–09. The School took this action while both father and daughter had been actively opposing the School's discriminatory actions, and shortly after Fitzgerald filed her charges of discrimination with the EEOC. That is an act against Fitzgerald as well as her father.

That the School told Fitzgerald's father that he was barred from volunteering "because he had appeared on the news in a rally to support his daughter," *id*. at 13 ¶ 105, does not establish that the School made the decision for reasons other than to retaliate against Fitzgerald. Such an inference would require reading the Complaint in the light most favorable to the School, not Fitzgerald, which is forbidden at this stage. *See Carlson*, 758 F.3d at 826.

As for the School's ministerial-exception arguments, even if the exception could apply here (which it cannot), adjudicating and dismissing on that ground would be premature here as a matter of law. Whether the ministerial exception applies is a fact-bound affirmative defense that must focus primarily on what an employee does in the job. *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2064 (2020); *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, 565 U.S. 171, 190, 195 n.4 (2012). Fitzgerald's Complaint—viewed in the light most favorable to her and with all reasonable inferences drawn in her favor, as the Court must do at this stage—does not clearly or conclusively establish that Fitzgerald's father was a minister.

## Conclusion

The Court should deny the School's motion to alter or amend its March 31 order.

Date: May 26, 2021                                  Respectfully submitted,

                                                                      /s/ *Bradley Girard*

                                                 RICHARD B. KATSKEE
                                                 BRADLEY GIRARD
                                                 ADRIANNE M. SPOTO
                                                 Americans United for Separation of
                                                    Church and State
                                                 1310 L Street NW, Suite 200
                                                 Washington, DC 20005
                                                 (202) 466-3234
                                                 girard@au.org

                                                *Counsel for Michelle Fitzgerald*

## Certificate of Service

I certify that on May 26, 2021, this response was filed using this Court's CM/ECF system. All participants in this case are registered CM/ECF users and will be served electronically by that system.

<u>/s/ *Bradley Girard*</u>