**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| MICHELLE FITZGERALD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:19-cv-4291-RLY-TAB |
| ) | |
| RONCALLI HIGH SCHOOL, INC., ) | |
| and the ROMAN CATHOLIC ) | |
| ARCHDIOCESE OF ) | |
| INDIANAPOLIS, INC., ) | |
| ) | |
| Defendants. ) | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO
ALTER OR AMEND JUDGMENT**

Plaintiff Michelle Fitzgerald's Title VII retaliation claim fails on the pleadings because her complaint makes clear that all adverse employment decisions were made before the alleged protected activity took place. And where her complaint alleges an additional action against a third party, the complaint's alleged facts both spell out a non-retaliatory basis for the decision and a First Amendment bar to bringing a claim based on it. Fitzgerald's response now tries to dispute her own pleadings (and her prior representations to this Court). But such litigation posturing fails where it is, as here, "directly contradicted by the allegations in [the] complaint." *Thomas v. French*, No. 4:12-CV-073, 2014 WL 1316873, at *4 (N.D. Ind. Mar. 28, 2014); *see, e.g.*, *Muse v. Justus*, 505 F. App'x 598, 599 (7th Cir. 2013) ("disregard[ing]" a "blanket assertion" that "contradicts the allegations in [plaintiff's] complaint").

**ARGUMENT**

Fitzgerald's response confirms her complaint's timeline: Roncalli made the decision on August 10, 2018, to place her on "paid administrative leave" in advance of nonrenewal, after being told she could not continue in her role while in public breach

of her contract by civil "marriage to a female spouse." Compl. ¶¶ 52, 56; *see* Resp. 3. Because she has offered no opposition activity prior to that date, neither that decision nor actions in furtherance of that decision can support a retaliation claim.

Fitzgerald responds that in "the ensuing days" she opposed "how she had been treated." Resp. 3. She then attempts to connect that to Defendants disallowing her from coming on campus and disabled access to her work email, claiming these acts constituted a "ratchet[ing] up" of the retaliation. Resp. 6.

But this pivot to campus and email access doesn't solve the problem. For one thing, nothing in the complaint suggests these acts were anything other than the normal incidents of ending employment, and thus part and parcel of the August 10 decision that (again) predated any protected activity. Indeed, it's strange to imagine otherwise—why would Fitzgerald maintain her email or campus presence as the school was replacing her? An employee can't convert a pre-protected-conduct termination decision into a retaliation claim merely by focusing on the employer's normal "manner of implementing" it. *Harvey v. County of Koochiching*, 527 F.3d 711, 725-26 (8th Cir. 2008) (employee barred from challenging suspension as retaliation also couldn't challenge the "deactivating [of her] cardkey" to effect the suspension); *see also, e.g.*, *Perez v. City of New York*, 843 F. App'x 406, 408 (2d Cir. 2021) (no causation where adverse action "was part and parcel of" pre-opposition "disciplinary process" (citing *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001))). To hold otherwise would be in practical terms to nullify the Supreme Court's repeated admonitions that Title VII must leave employers free to "proceed[] along lines previously contemplated" even when an employee later interjects protected activity. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 272 (2001); *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 358 (2013).

Second, if separated from her actual nonrenewal, neither of these end-of-employment items makes out a materially adverse action unto themselves. For Title VII

2

retaliation purposes, a materially adverse action "must be one that a reasonable employee would find to be materially adverse such that the employee would be dissuaded from engaging in the protected activity." *Lewis v. Wilkie*, 909 F.3d 858, 867 (7th Cir. 2018) (cleaned up). No reasonable employee already put on leave in advance of nonrenewal would find these minor actions furthering the leave and replacement (even if true as described) to deter protected activity. *See Freelain v. Village of Oak Park*, 888 F.3d 895, 902 (7th Cir. 2018) (material adversity is "an objective standard"); *see also, e.g.*, *Kaplan v. New Trier High Sch.*, No. 11 C 981, 2011 WL 5301786, at *4 (N.D. Ill. Nov. 2, 2011) (dismissing retaliation claim under Seventh Circuit precedent where plaintiff failed to "allege [action] that was so onerous as to dissuade a reasonable employee from exercising her rights" as an objective matter, even though she alleged action "caused her to suffer depression and exacerbated her diabetes symptoms").

Fitzgerald thus changes tacks, attempting to lump in Roncalli's decision to "put Fitzgerald on [paid] administrative leave" on August 10 as a "response[] to her unwillingness to accept the discrimination." Resp. 5. Likewise, Fitzgerald lists "the School refus[ing] to renew her contract" as a "reaction to Fitzgerald's EEOC claims and her unwillingness to accept or stay silent about the School's discrimination." Resp. 4. But these characterizations contradict the complaint, which states: "Roncalli's decision not to renew Fitzgerald's employment contract was consistent with Defendant's statement of intent in the meeting with Fitzgerald on August 10, 2018," that is, that Fitzgerald was going to be nonrenewed so long as she didn't "resign[]" or "dissolv[e] what they termed her 'civil union.'" Compl. ¶ 53. And while she now attempts to claim Defendants "demand[ed]" that she "stay silent about the School's discrimination," Resp. 4-5, her complaint is clear that the only (alleged) request to "keep quiet" was about her own same-sex union—not about the school's policies or

3

practices regarding such unions (as required for a retaliation claim), which the complaint confirms were already public and open. *See* Compl. ¶¶ 49, 55.[1]

At base, these are attempts to conjure two claims from one. Fitzgerald alleges she was placed on leave in advance of nonrenewal because she confirmed her intent to remain in a public same-sex union that her contract prohibited. Whether that action supports a claim for unlawful termination (it doesn't), it cannot be duplicated into a claim for retaliation on these allegations. *See Kelly v. St. Luke Cmty. United Methodist Church,* No. 3:14-cv-1590-B, 2015 U.S. Dist. LEXIS 154174, at *14 (N.D. Tex. Nov. 10, 2015) ("Kelly could not have opposed her own dismissal until *after* it occurred, making it unlikely that Masters had decided to retaliate against her for something that had not yet happened.").

Fitzgerald's alternative arguments regarding her father's volunteer ministry with a student retreat are equally foreclosed by the complaint. As explained previously, the complaint expressly alleges that Fitzgerald's father was told he was dismissed due to concerns arising from his *own* protest activity. Compl. ¶ 105. Rather than allege any fact calling that into question—or supporting Fitzgerald's conclusory statements that the dismissal was done to deter her EEOC action, *see* Resp. 8—the complaint specifically spells out that her father and family have "frequent[ly]" engaged in protest activity. Compl. ¶ 70; *see* Resp. 8 ("both father and daughter had been actively opposing" firing).[2] In short, the complaint does not plausibly connect any action by Fitzgerald with decisions made regarding her father.

---

[1] Fitzgerald also declined to rely on any of the August actions in her prior filing. *See* ECF 53 (Response to Defendants' Motion for Judgment on the Pleadings) ("[T]he chronology buttresses the pleading: while the Plaintiff was placed on leave and banned from campus in August 2018, she was not given notice that her contract would not be renewed until May 2, 2019, well after the events giving rise to the retaliation arose.").
[2] Fitzgerald declines to press the theory—suggested in her complaint, *see* Compl. ¶ 70—that the father fell within Title VII's zone of interests. Resp. 7 n.2.

4

But regardless of causation issues, Fitzgerald's attempt to hold Defendants liable for the actions with respect to her father are barred by the First Amendment. As explained in our motion (at 4-5), a religious school cannot be civilly liable for retaliation under Title VII for a decision to dismiss someone involved in "educating and forming students in the faith," whatever the reason and whatever their additional responsibilities. *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2069 (2020); *see id.* at 2064 (religious schools protected in decisions regarding those responsible for "educating young people in their faith, inculcating its teachings, and training them to live their faith").

Fitzgerald's sole response—that applying the ministerial exception to the retreat role is "premature," Resp. 9—is belied by the complaint. The complaint states unambiguously that the *entirety* of Pat Fitzgerald's role was to supervise students in "their personal and spiritual growth," and provide "significant" personal guidance and teaching to lead the students in a "deeply personal and emotional experience." Compl. ¶¶ 98-102. In short, the complaint states unambiguously that Pat Fitzgerald's role was to "form[ ] students in the faith," and no Title VII retaliation claim can be maintained arising from a religious school removing that role. *Our Lady*, 140 S. Ct. at 2069; *see Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 196 (2012) (applying ministerial exception to bar retaliation claim). Accordingly, the claim is barred, consistent with other courts that have found the ministerial exception to bar a claim where the pleadings acknowledge a substantial religious duty. *See Demkovich v. St. Andrew the Apostle Parish*, No. 1:16-CV-11576, 2017 WL 4339817, at *3 (N.D. Ill. Sept. 29, 2017) (applying ministerial exception to dismiss action based substantially on "the substance of Demkovich's work at St. Andrew as he himself has pled it" in the complaint); *Sterlinski v. Catholic Bishop of Chi.*, 203 F. Supp. 3d 908, 914-15 (N.D. Ill. 2016) (dismissing where plaintiff's complaint alone established that his "duties placed him within the confines of the ministerial

5

exception"); *see also, e.g.*, *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (claim fails at pleading stage if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense").

## CONCLUSION

The Archdiocese respectfully requests the Court alter or amend the order of March 31, 2021, to dismiss Fitzgerald's Title VII retaliation claim.

Respectfully submitted,

*/s/ Christopher C. Pagliarella*

| | |
|---|---|
| John S. (Jay) Mercer, #11260-49<br>Wooton Hoy, LLC<br>13 North State Street, #2A<br>Greenfield, IN 46140<br>(317) 439-0541 | Luke W. Goodrich (DC # 977736)<br>Daniel H. Blomberg (DC # 1032624)<br>Joseph C. Davis (DC # 1047629)<br>Christopher C. Pagliarella (DC #273493)<br>The Becket Fund for Religious Liberty<br>1919 Pennsylvania Ave. NW Ste. 400<br>Washington, DC 20006<br>(202) 955-0095<br>(202) 955-0090 fax<br>cpagliarella@becketlaw.org |

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served upon the following on June 2, 2021, by this Court's electronic filing system:

Mark W. Sniderman
Findling Park Conyers Woody & Sniderman, P.C.
151 N. Delaware St., Suite 1520
Indianapolis, IN 46204
Tel: (317) 361-4700

David T. Page
Henn Haworth Cummings & Page
1634 W. Smith Valley Road, Suite B
Greenwood, IN 46142
Tel: (317) 885-0041

Adrianne Spoto
Bradley Girard
Richard B. Katskee
Americans United for Separation of Church and State
1310 L Street NW, Suite 200
Washington, DC 20005
Tel: (202) 466-3234

    By: */s/ Christopher C. Pagliarella*
    Luke W. Goodrich (DC # 977736)
    Daniel H. Blomberg (DC # 1032624)
    Joseph C. Davis (DC # 1047629)
    Christopher C. Pagliarella (DC # 273493)
    The Becket Fund for Religious Liberty
    1200 New Hampshire Ave NW
    Suite 700
    Washington, DC 20036
    (202) 955-0095
    (202) 955-0090 fax