UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MICHELLE FITZGERALD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:19-cv-04291-RLY-TAB |
| | ) | |
| RONCALLI HIGH SCHOOL, INC. and the ROMAN CATHOLIC ARCHDIOCESE OF INDIANAPOLIS, INC., | ) ) ) | |
| | ) | |
| Defendants. | ) | |

**ENTRY ON DEFENDANTS' MOTION TO ALTER OR AMEND JUDGMENT**

Now pending before the court is Defendants Roncalli High School and the Roman Catholic Archdiocese of Indianapolis' motion to alter or amend judgment. On March 31, 2021, this court determined that Plaintiff Michelle Fitzgerald's Title VII and state-law claims survived Defendants' motion for judgment on the pleadings. Defendants argue that this court did not address the argument that Fitzgerald failed to plead "but-for" causation with respect to her Title VII retaliation claim. Specifically, Defendants argue her claim fails on the pleadings because she grounds her claim in protected activity that post-dates the alleged adverse employment action. Because the court concludes that Fitzgerald has adequately pleaded a Title VII retaliation claim, Defendants' motion is **DENIED**.

**I.    Legal Standard**

Relief pursuant to Rule 59(e) is an "extraordinary remed[y] reserved for the exceptional case." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008). To prevail on a

1

motion to alter or amend judgment under Rule 59(e), the moving party "must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 955 (7th Cir. 2013). A manifest error occurs only when there is a "wholesale disregard, misapplication, or failure to recognize controlling precedent." *Burritt v. Ditlefsen*, 807 F.3d 239, 253 (7th Cir. 2015).

## II.   Discussion

In this court's entry on Defendants' motion for judgment on the pleadings, the court explained that "[t]his case presents virtually identical issues to those presented in another case in this court," *Starkey v. Roman Catholic Archdiocese of Indianapolis, Inc. et al.*, No. 1:19-cv-3153-RLY-TAB (S.D. Ind.), and that "Defendants' motion presents the same issues and arguments as those presented in *Starkey*." (Filing No. 98, at 1, 4). The court adopted the reasoning and conclusions from *Starkey* and determined that "Fitzgerald has carried her burden of pleading sufficient facts to support a plausible claim of a Title VII violation." (*Id.* at 5).

Defendants direct the court to what they feel is a significant factual difference between *Starkey* and this case, which supports an argument unique to this litigation. Defendants argue that Fitzgerald's Complaint acknowledges that the decision to terminate her was made on August 10, 2018, when Roncalli President Joseph Hollowell and Principal Chuck Weisenbach confronted Fitzgerald about her same-sex marriage. (Filing No. 1, Compl. ¶ 52). Hollowell and Weisenbach informed her that she had the option of resigning, dissolving her marriage, "keeping quiet" until her contract expired, or being

fired. (*Id.* ¶ 53).  She refused to do any of those things, so Defendants placed her on administrative leave. (*Id.* ¶¶ 55–56).  Two days later, on August 12, 2018, Defendants banned Fitzgerald from the school campus until further notice and issued a press release stating that she had been placed on administrative leave because she was "living in a civil marriage that is not valid in the eyes of the Church." (*Id.* ¶ 58).  That same day, Defendants also cut off Fitzgerald's access to her work e-mail account. (*Id.* ¶ 59).  On May 2, 2019, Roncalli informed Fitzgerald that her contract was not going to be renewed for the upcoming school year. (*Id.* ¶ 66).

In addition to describing actions taken directly against Fitzgerald, the Complaint alleges that shortly after Fitzgerald filed an EEOC complaint on January 9, 2018, Defendants punished Fitzgerald's father, Pat Fitzgerald, by prohibiting him from volunteering for Roncalli's Senior Retreat. (*Id.* ¶¶ 5, 96–109).  Pat was devastated when he learned he was barred from participating in Senior Retreats. (*Id.* ¶ 104).  When he asked why, "he was advised that the decision was being made by the Defendants because he had appeared on the news in a rally to support his daughter wherein he had held up a sign that read 'Please treat my daughter Shelly kindly.'" (*Id.* ¶ 105).  As the Complaint makes plain, Defendants' actions against Pat "were intended to punish" and "deter Fitzgerald's social activism and her efforts to oppose the Defendants' unlawful acts." (*Id.* ¶¶ 107–08).

According to Defendants, the Complaint makes clear that the events and actions after August 10 were simply the carrying-out of Defendants' "statement of intent in the meeting with Fitzgerald on August 10, 2018." (*Id.* ¶ 67).  But viewing the Complaint in

3

the light most favorable to Fitzgerald and drawing all reasonable inferences in her favor, as is required at this stage, the court reaffirms its conclusion that Fitzgerald has plausibly alleged a Title VII claim for retaliation.  First, the Complaint does not make clear that Defendants had committed to all of the post-August 10 actions—including banning her from campus, issuing a press release about the decision to place Fitzgerald on administrative leave, and preventing her father from volunteering—before Fitzgerald began speaking out about the alleged discrimination.  The Complaint describes Fitzgerald's refusal to "keep quiet" about her marriage or Defendants' actions, and it alleges that "[s]ince August 10, 2018, Fitzgerald and her family have taken an active role in opposing the discriminatory and unlawful actions taken by the Defendants against her."  (Compl. ¶ 69).  By requiring Fitzgerald to keep quiet about her marriage and Defendants' actions or face termination, Defendants placed restraints on her ability or willingness to oppose the allegedly discriminatory actions.[1]  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (holding VII's antiretaliation provision prohibits any employer action that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination").  And warning Fitzgerald that any public opposition to their decision will result in further punishment does not mean that the further punishment is not retaliatory.

---

[1] Defendants argue that the Complaint is clear that the only request to "keep quiet" was about her marriage, not Defendants' actions.  But it is entirely reasonable to infer that the Defendants were also requesting that Fitzgerald not publicly discuss the entire situation, including the Defendants' policies and practices surrounding Fitzgerald's marriage.

4

Furthermore, even if the decision to terminate Fitzgerald had been made on August 10, 2018, she can still make out a claim for retaliation if she alleges "ratcheting up or increased harassment." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 793 (7th Cir. 2007).  The Complaint identifies several additional post-August 10 actions that can plausibly be read as a "ratcheting up" of Defendants' retaliation, including the decision to ban Pat from Senior Retreats.  There is no indication that the school had determined on August 10 that any action against Pat was warranted, but after Fitzgerald filed her EEOC complaint in January, Defendants banned Pat from participating in Senior Retreats.  According to the Complaint, this was done to "punish" and "deter" Fitzgerald from further opposing Defendants' actions.  It is of no moment that the Complaint also states that Pat was told that he was prohibited from volunteering "because he had appeared on the news in a rally to support his daughter."  (Compl. ¶ 105).  While that may have been the reason Defendants gave for the decision, it does not mean Defendants did not also decide to do so to retaliate against Fitzgerald.

Contrary to Defendants' argument, such third-party reprisals can violate Title VII.  In *Thompson v. North American Stainless, LP*, the court held that an employer committed actionable retaliation when, after an employee filed an EEOC charge, the employer fired the employee's fiancé, because it is "obvious that a reasonable worker might be dissuaded from engaging in protected activity if she knew that her fiancé would be fired."  562 U.S. 170, 174–75 (2011).  Such is the case here, where as the Complaint alleges, Defendants' reprisal against Pat "w[as] intended to cause both Pat Fitzgerald and his daughter so much emotional anguish and pain that Fitzgerald would forego any litigation against the

Defendants." (Compl. ¶ 109). In short, it is plausible that the decision to take action against Pat in mid-January 2019 amounted to a ratcheting up of the retaliation against Fitzgerald and was done to retaliate against Fitzgerald for filing an EEOC complaint and publicly opposing Defendants' actions.

Finally, to the extent Fitzgerald's retaliation claim relies on the treatment of her father, Defendants turn to the ministerial exception as an alternative grounds to dismiss the claim. Under that rule, "courts are bound to stay out of employment disputes involving those holding certain important positions within churches and other religious institutions." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020). The Supreme Court has recognized that "educating young people in their faith, inculcating its teachings, and training them to live their faith" falls within the ministerial exception. *Id.* at 2064. Defendants argue that the Complaint makes clear that the Senior Retreat, which provides seniors "an opportunity to explore and reflect upon their personal and spiritual growth," "is a deeply personal and emotional experience that is supervised by adult volunteers who guide the students on a journey of reflection and understanding." (Compl. ¶¶ 98–99). As a result, Pat's role as a volunteer means he is a minister. *See Cannata v. Cath. Diocese of Austin*, 700 F.3d 169, 177 (5th Cir. 2012) (evidence showed that church musicians "whether they are professional or volunteer" qualified as ministers). However, whether an employee qualifies as a minister is a fact-intensive inquiry. *See Our Lady*, 140 S. Ct. at 2064 ("What matters, at bottom, is what an employee does."). While Defendants point to two cases in which courts have applied the ministerial exception based on the pleadings, neither of those cases demonstrate that the

6

court can do so here.  *See Demkovich v. St. Andrew the Apostle Par., Calumet City*, No. 1:16-CV-11576, 2017 WL 4339817 (N.D. Ill. Sept. 29, 2017) (finding music director was a minister in light of caselaw involving a "nearly identical plaintiff" who qualified as a minister, and where the complaint identified duties that were "strikingly similar" to those of other plaintiffs in cases applying the ministerial exception); *Sterlinski v. Cath. Bishop of Chicago*, 203 F. Supp. 3d 908, 914–15 (N.D. Ill. 2016) (finding music director's duties, which "mirror[ed]" those of another music director plaintiff who qualified as a minister, "placed him within the confines of the ministerial exception").  Here, the court cannot conclude from the general allegations in the Complaint alone that Pat Fitzgerald qualifies as a minister.  Evidence is necessary to understand the nature of the Senior Retreats and the precise duties of volunteers like Pat.

### III.  Conclusion

For the foregoing reasons, Defendants' Motion to Alter or Amend Judgment (Filing No. 107) is **DENIED**.

**SO ORDERED** this 30th day of March 2022.

*[signature]*
RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.